RICHARD DULGARIAN[1] vs. GREGORY STONE & another.[2]

Middlesex. May 1, 1995. - July 24, 1995.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Civil,* Summary judgment. *Libel and Slander. Unlawful Interference. Consumer Protection Act,* Unfair or deceptive act.

In a defamation case involving a television news broadcast about a matter of public concern, a Superior Court judge correctly granted summary judgment in favor of the defendants where the plaintiffs had no reasonable expectation of proving the statements in the broadcast to be false. [847-851]

On a claim for intentional interference with business relations arising from statements made in a television news broadcast, the judge correctly granted summary judgment for the defendants where the plaintiffs had no reasonable expectation of establishing that the defendants' conduct arose from improper motives or involved improper means. [851-852]

On a claim for damages for publication of injurious falsehoods, in which the plaintiffs offered no evidence showing or tending to show that the defendants knew or should have known that their statements were false or that the defendants acted in reckless disregard of the statements' truth or falsity, the judge correctly allowed the defendants' motion for summary judgment. [852]

In a civil action where the statements of the defendants in the course of a television news broadcast did not support the plaintiffs' cause of action for defamation, the statements likewise did not support the plaintiffs' cause of action under G. L. c. 93A, § 11. [852-853]

CIVIL ACTION commenced in the Superior Court Department on October 26, 1990.

The case was heard by *George A. O'Toole Jr.,* J., on a motion for summary judgment.

---

[1]Individually and doing business as Northeast Auto and Truck Appraisal, and National Auto Body and Sales, Inc. We shall refer to "the plaintiffs."

[2]Westinghouse Broadcasting Company, Inc.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Mark B. Johnson* for the plaintiffs.

*Martin J. Rooney* for the defendants.

ABRAMS, J. In late May, 1989, WBZ-TV4 broadcast a
three-part "I-Team" investigative report entitled "Highway
Robbery?". The report concerned potential conflicts of inter-
est between automobile body repair shops and drive-in ap-
praisal services for automobile insurance companies. One
portion of the second segment of the report focused on the
plaintiffs. As a result of the broadcast of the investigative
report, the plaintiffs brought this action for defamation (slan-
der and libel), interference with business relations, injurious
falsehood, and violation of G. L. c. 93A, § 11 (1994 ed.). A
Superior Court judge allowed the defendants' motion for
summary judgment on all counts. The plaintiffs appealed.
We transferred the case here on our own motion. We affirm.

1. *Facts.* The facts are not disputed. On May 23, 1989,
WBZ-TV4 broadcast a segment of a three-part investigative
report entitled "Highway Robbery?". The text of the portion
of the broadcast relating to the plaintiffs' operations is as
follows:

REPORTER:          "Our investigation uncovered another area
                   of potential abuse involving appraisal ser-
                   vices. Those services do damage estimates
                   on cars after collisions. The law says it's a
                   conflict of interest for an appraiser to use a
                   body shop for drive-in estimates. Here's
                   why: there could be collusion whereby the
                   appraiser could steer business to the nearby
                   shop. That could create an unfair advan-
                   tage.

                   "On a recent Saturday we saw car after
                   car pulling into an Allstate drive-in ap-
                   praisal service operated out of this body
                   shop in Lowell . . . The owner of the shop
                   insists this is perfectly legal. . . ."

DULGARIAN: "People have a choice. They don't have to come here. We don't ask them to come here. They're given a choice of shops by the insurance company and they can go where they want."

REPORTER: "In addition, Dulgarian has his own independent appraisal service housed in another part of the building . . . ."

DULGARIAN: "They're two individual businesses. They pay taxes differently. They're registered differently. OK?"

REPORTER: "We showed videotapes of Dulgarian's operations to a former member of the appraisers board who helped write the conflict of interest regulations, and to this current member. Both said that there appeared to be a violation of the law.

"In your opinion, does this present a conflict of interest?"

JANSSON:[3] "It certainly does, in my opinion."

REPORTER: "We found similar set-ups at two other locations in Lowell, with body shops and appraisal services owned by the same people. Here, at Towne Auto Body, in the same building, and at American Auto Body, in two buildings on the same property. Our experts said both locations appear to be conflicts of interest. So what does this mean to the consumer? Possibly less competition among body shops, and higher prices for repairs, as the man who helped write the law explains."

---

[3]Bertill Jansson, member of the Massachusetts auto damage appraiser licensing board.

BISCEGLIA:[4]     "We had hoped to have an open market, with no undue pressure put on the consumer to try to force him to go somewhere. Let him use the whole marketplace to pick his own bodyshop without someone trying to steer him or lowball to a specific shop."

.  .  .

REPORTER:     "Late last week, Allstate told us that they have stopped using the National Auto Body site for drive-in appraisals because they also have concluded that there was a conflict of interest. . . ."

2. *Summary judgment.* "Summary judgment is appropriate when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.' Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974)." *Symmons* v. *O'Keeffe*, 419 Mass. 288, 293 (1995). "[The] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates . . . that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Id.*, quoting *Wheatley* v. *American Tel. & Tel. Co.*, 418 Mass. 394, 397 (1994). See *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 809 (1991) (moving party's "burden need not be met by affirmative evidence negating an essential element of the plaintiff's case, but may be satisfied by demonstrating that proof of that element is unlikely to be forthcoming at trial").

"[S]ummary judgment procedures are especially favored in defamation cases. . . . 'Allowing a trial to take place in a meritless case "would put an unjustified and serious damper on freedom of expression." '. . . Even if a defendant in a libel case is ultimately successful at trial, the costs of litigation may induce an unnecessary and undesirable self-censorship."

---

[4]Frank Bisceglia, former member of the same board.

(Citations omitted.) *King* v. *Globe Newspaper Co.*, 400 Mass. 705, 708 (1987), cert. denied, 485 U.S. 940 and 962 (1988).

3. *Defamation.* a. *Legal principles.* The speech at issue was a news broadcast about a matter of public concern. "[I]n order for [such speech] to be the basis of a recovery from th[e] media defendant[s], the plaintiffs must prove not only that the statements were defamatory but also that they were false." *Friedman* v. *Boston Broadcasters, Inc.*, 402 Mass. 376, 381 (1988). See *Philadelphia Newspapers, Inc.* v. *Hepps*, 475 U.S. 767, 776 (1986) (where plaintiff is a private figure and newspaper articles are a matter of public concern, there is "a constitutional requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages"). This requirement insulates from liability statements that are not provable as false. *Hepps, supra* at 778. See *Phantom Touring, Inc.* v. *Affiliated Publications*, 953 F.2d 724, 727 (1st Cir.), cert. denied, 504 U.S. 974 (1992) ("statements made by a media defendant 'must be provable as false' before there can be defamation liability"); *National Ass'n of Gov't Employees, Inc.* v. *Central Broadcasting Corp.*, 379 Mass. 220, 230 (1979), cert. denied, 446 U.S. 935 (1980), quoting *Hotchner* v. *Castillo-Puche*, 551 F.2d 910, 912 (2d Cir.), cert. denied sub nom. *Hotchner* v. *Doubleday & Co.*, 434 U.S. 834 (1977) ("An assertion that cannot be proved false cannot be held libelous"). The Superior Court judge correctly granted summary judgment because the plaintiffs had no reasonable expectation of proving the statements in the broadcast false. See *Symmons, supra* at 293, quoting *Wheatley, supra* at 397.

b. *Discussion.* The relevant portion of the report began by stating that the "I-Team" investigation uncovered another area of "potential abuse." To prove the statement false, the plaintiffs would have to prove that there was no possibility, however slight, of any form of abuse in the matter under investigation. The plaintiffs did not have a reasonable expectation of proving the statement false.

The reporter stated that appraisal services do repair cost estimates on automobiles damaged in collisions. The plaintiffs did not contend that this statement was false. The reporter then gave an essentially correct statement of the relevant law.[5] See *Jones* v. *Taibbi*, 400 Mass. 786 (1987) (concluding that statement was "essentially true"). The reporter's explanation of the purpose of the law was not challenged by the plaintiffs. Further, this statement does not appear "reasonably susceptible of a defamatory connotation." *Id.* at 791.

The reporter's statement that, on a recent Saturday "we saw car after car pulling into an Allstate drive-in appraisal service operated out of this body shop in Lowell," was not accurate. As seen in the accompanying video, the automobiles pulled up to the curb in front of a sign saying "Allstate Drive-In Appraisal Services" which was located in front of plaintiff, National Auto Body and Sales. In defamation actions, we "make an independent examination of the whole record." *Milkovich* v. *Lorain Journal Co.*, 497 U.S. 1, 17 (1990). Viewed as a whole, the tenor of the report was accurate. The inaccurate description of automobiles pulling up to, instead of into the shop was counterbalanced by the accompanying video. The reporter's statements were balanced by Dulgarian's. The inaccurate statement, when considered in the context in which it was broadcast, was not "reasonably susceptible of a defamatory connotation." *Taibbi, supra* at 791.

There is no dispute that the statements by the reporter that "[t]he owner of the shop insists this is perfectly legal" and that "Dulgarian has his own independent appraisal service housed in another part of the building" were true. The plaintiffs did not contest the veracity of the statements made by Dulgarian.

---

[5]The reporter stated: "The law says that it's a conflict of interest for an appraiser to use a body shop for drive-in estimates." The applicable regulation, 212 Code Mass. Regs. § 2.02 (7) (1986) states: "It shall be a conflict of interest if any licensed appraiser uses an auto body repair shop for Drive-In Appraisal Service for an insurer."

The opinions of Jansson and Bisceglia (the experts, see nn.3 & 4, *supra*) that the law appeared to be violated and that there was a conflict of interest also do not support a cause of action.[6] As a republisher of these statements, the defendants are subject to the same liability as if they were the original publishers. See *Taibbi, supra* at 786, and cases cited. The Superior Court judge correctly determined that these were statements of opinion. In making such a determination, "[t]he court must 'examine the statement in its totality in the context in which it was uttered or published. The court must consider all the words used . . . [and] must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement . . . .' " *Lyons* v. *Globe Newspaper Co.*, 415 Mass. 258, 263 (1993), quoting *Fleming* v. *Benzaquin*, 390 Mass. 175, 180-181 (1983). See *Lyons, supra* at 263, quoting *Myers* v. *Boston Magazine Co.*, 380 Mass. 336, 339 (1980) ("If 'the statement unambiguously constitutes either fact or opinion,' this issue is a question of law for the [judge] to decide").

That the statements were statements of opinion does not preclude a cause of action. See *Milkovich, supra* at 18. "[E]xpressions of 'opinion' may often imply an assertion of objective fact." *Id.* The opinions at issue, however, were based on disclosed nondefamatory facts, namely the regulation described in the broadcast, videotapes of the plaintiffs' operations,[7] and the experts' experience as members of the auto damage appraiser licensing board. The "logical nexus

---

[6]The plaintiffs did not allege that the defendants were untruthful in stating that they showed the experts videotapes of Dulgarian's operations, that the experts were a present and former member of the licensing board, or that they both said that there appeared to be a violation of the law and conflicts of interest.

[7]That the videotapes viewed by the experts were different than those shown in the broadcast is irrelevant. The news report broadcast only short excerpts of the tapes shown to the experts. These excerpts demonstrated the nature of the tapes. Stone stated that the experts were shown videotapes of the operations, not that they were shown only the short excerpts included in the broadcast.

between the facts and the opinion[s] was sufficiently apparent to render unreasonable any inference that 'the derogatory opinion[s] must have been based on undisclosed facts.' " *Lyons, supra* at 266. An "expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified or unreasonable the opinion may be or how derogatory it is." *Lyons, supra* at 262, quoting *National Ass'n of Gov't Employees, Inc., supra* at 227. See *Milkovich, supra* at 20 ("a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection").

The reporter's statements about the possible effects of apparent conflicts of interest also were opinion based on disclosed nondefamatory facts, namely the facts disclosed in the broadcast and the statement of Bisceglia. Further, these statements were not "provable as false." Bisceglia's statement about the intent of the law was not "provable as false" and therefore not actionable.

The reporter's statement that Allstate had told "us" that they had stopped using the National Auto Body site for drive-in appraisals because they (Allstate) concluded that there was a conflict of interest, does not support a cause of action. This statement asserts two facts: that Allstate concluded that there was a conflict of interest and therefore stopped using the site, and that Allstate told this to the defendants. The plaintiffs did not make an offer of proof that showed that either of these facts were untrue.

Finally, the title of the series of reports, "Highway Robbery?", constitutes rhetorical flourish or hyperbole, which is protected from defamation liability. See *Lyons, supra* at 266-267 (statements of rhetorical hyperbole excluded from defamation liability); *Phantom Touring, supra* at 727 ("cases explicitly protect 'rhetorical hyperbole' and other types of 'imaginative expression' that writers use to enliven their prose. . . . For example, a theater critic who wrote that, 'The producer who decided to charge admission for that show is committing highway robbery,' would be immune

from liability because no reasonable listener would understand the speaker to be accusing the producer of the actual crime of robbery" [citation omitted]); *id.* at 728 (description of theater production as "a rip-off, a fraud, a scandal, a snake-oil job" is "obviously protected hyperbole").

The plaintiffs claim that, in its entirety, the report could be seen as a factual assertion that Dulgarian operated his two businesses together and that this constituted a violation of the law. The broadcast did not constitute such an assertion. Each statement was a true fact, a nonprovable as false fact or an opinion, clearly identified as such, based on disclosed nondefamatory facts. In addition to the underlying facts and the opinions that a conflict of interest existed, the report presented Dulgarian's opinions. It was up to the viewers to draw their own conclusions.

4. *Intentional interference with business relations.* The plaintiffs claim that there was a triable issue whether the defendants' statements in the broadcast and the statements they made to Allstate constituted intentional interference with the plaintiffs' business relations. Summary judgment was proper because the plaintiffs could not establish that the defendants' conduct arose from improper motives or involved improper means.

An essential element of the tort of intentional interference with business relations is that the interference be improper in motive or means.[8] See *G.S. Enters., Inc.* v. *Falmouth*

---

[8] We previously had required that the interference be malicious. *Elm Medical Lab., Inc.* v. *RKO Gen., Inc.*, 403 Mass. 779, 787 (1989). In 1990, we clarified the requirement by replacing the term malicious with the term improper. *United Truck Leasing Corp.* v. *Geltman*, 406 Mass. 811, 815-816 (1990). Recent cases on intentional interference with contractual relations have further clarified the requirement to be that the interference be "improper in motive or means." See, e.g., *Draghetti* v. *Chmielewski*, 416 Mass. 808, 816 (1994); *G.S. Enters., Inc.* v. *Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991). See also *Draghetti, supra* at 809, 816 (treating unlawful interference with advantageous business relations together with and under rules for unlawful interference with contractual relations); *Geltman, supra* at 815 (setting new rule for both interference with a business relationship and interference with a contemplated contract).

*Marine, Inc.,* 410 Mass. 262, 272 (1991); *United Truck Leasing Corp.* v. *Geltman,* 406 Mass. 811, 815-816 (1990). The plaintiffs did not allege, and the evidence did not support, any improper motive or means. As discussed above, the plaintiffs could not prove that any of the defendants' statements were false. There is no indication that the report was broadcast for any reason other than the reporting on an issue of public concern. There is no indication that the conversation with Allstate personnel was improper or carried on for any purpose other than journalism.

5. *Injurious falsehood.* The Restatement (Second) of Torts § 623A (1977) sets forth the requirements for liability for publication of injurious falsehoods: "One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to the interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity." The plaintiffs did not offer affidavits or other documents showing or tending to show that the defendants knew or should have known that their statements were false or that the defendants acted in reckless disregard of their truth or falsity.[9] Thus, the Superior Court judge correctly allowed the defendants' motion for summary judgment on this count.

6. *G. L. c. 93A, § 11.* General Laws c. 93A, § 11, allows recovery for "the use or employment . . . of an unfair method of competition or an unfair or deceptive act or practice." See G. L. c. 93A, § 2 (1994 ed.). The plaintiffs argue that this claim was supported by the defendants' "broadcast

---

[9]The Superior Court judge did not discuss this requirement, but instead, said that malice was required. See *Gott* v. *Pulsifier,* 122 Mass. 235, 239 (1877) (where statement is in public interest, there is no action without proof of malice). The plaintiffs argue that malice is not an element of the tort. We do not reach this issue.

of erroneous assertions couched as facts."[10] Defamatory statements are actionable under G. L. c. 93A. *A.F.M. Corp. v. Corporate Aircraft Management*, 626 F. Supp. 1533, 1551 (D. Mass. 1985). However, where allegedly defamatory statements do not support a cause of action for defamation, they also do not support a cause of action under G. L. c. 93A. See *id.* at 1552 ("As [the defendant] did not exceed its qualified privilege, . . . [the defendant] did not engage in any unfair or deceptive trade practices").

*Judgment affirmed.*

---

[10]Their complaint alleged as the unfair business practices the defendants' "fabricating a scandalous documentary," "publishing a false and misleading documentary," and "publish[ing] and air[ing] a false documentary after being advised of the false statements contained therein by Dulgarian."