Rufo, Robert C., J.
INTRODUCTION
This case arises from the publication of the book Invisible Eden, written by defendant Maria Flook (“Flook”) and published by defendant Random House, Inc. (collectively “the defendants”). Published in 2003, the book concerns, among other things, the then ongoing murder investigation of Christa Worthington (“Worthington”). The plaintiff, Tim Arnold (“Arnold”), alleges that he was libeled by the book, and that the defendants intentionally and negligently caused him emotional distress. The defendants now seek summary judgment on all claims. For the reasons discussed below, the defendants’ motion for summary judgment is ALLOWED.
BACKGROUND
The following facts are undisputed. In January 2002, Worthington was murdered at her home in Truro, Massachusetts. Soon thereafter, Arnold was identified by investigators as a suspect.[2] Arnold previously had a romantic relationship with Worthington and was Worthington’s neighbor. In the six months that followed the murder, Arnold was questioned by investigators and was told that they considered him a suspect.
By 2003, investigators had multiple theories for Worthington’s then unsolved murder, including the possibility that the perpetrator had killed Worthington after witnessing her with another man. District Attorney Michael O’Keefe (“O’Keefe”) went public with this theory at a press conference on January 10, 2003. At that time, O’Keefe viewed Arnold as the prime suspect. Following the press conference, Arnold concluded that investigators considered him to be the prime suspect. Arnold was questioned by investigators again on January 18, 2003. During this interrogation, Arnold was accused of committing the crime. The lead interrogator, Massachusetts State Trooper Christopher Mason (“Mason"), believed then that Arnold had committed the crime. This interrogation confirmed Arnold’s belief that investigators had concluded that he murdered Worthington.
Invisible Eden, written by Flook, was published by Random House, Inc. on or about June 24, 2003. The *92 book, in part, concerns the Worthington murder investigation. Prior to publication, Flook interviewed Arnold approximately six to ten times. At the time the book was published the investigation was still ongoing. The book makes note of that fact.
Arnold claims that he was libeled by a passage in the book (“the passage”). The passage, located on pages 389 and 390, recounts a conversation between Flook and O’Keefe that took place in December 2002, where Flook proposed, and O’Keefe reacted to, possible scenarios for the murder. It is undisputed that the passage is meant to refer to Arnold. The pertinent portion of the passage reads as follows:
O’Keefe says that I’m not using my brains. “Think,” he says. “Think from the other side of it.”
O’Keefe searches my face as if watching a Rube Goldberg machine engaging its sprockets, sun gears, planet gears, levers, compound levers and pulleys that might hatch the correct analysis.
I tell him, “Oh. Wait. It’s a third party? A prowler watches [Worthington] come home with someone. A stranger. Another man.”
The peeper sees [Worthington] together with his rival. Standing outside, in the freezing blear, the killer monitors their tiyst. He watches him nibble her neck and peel her fawn sweater away from her shoulder, and—
When the visitor is finished, laces his boots, zips his parka, and leaves, the prowler muscles his way into the house to confront her. He kicks the door in.
O’Keefe says, “Now, who do you think that is?”
In addition to Flook, Arnold also spoke to other journalists, including some from the Boston Globe, Cape Cod Times and New York Magazine. Arnold’s comments, later quoted by these journalists in their news stories, related to the investigation, his discovery ofWorthington’s body, his impression of Worthington, and his relationship with Worthington and her daughter. In total, Arnold spoke to members of the press, other than Flook, on at least twelve occasions.
On June 20, 2006, Arnold filed a complaint in this court. Three days later, Arnold filed an amended complaint. The amended complaint alleges that the passage falsely and libelously imputes Worthington’s murder to Arnold. The amended complaint also seeks relief for intentional and negligent infliction of emotional distress. The defendants have moved for summary judgment, arguing that Arnold cannot prove the elements of his claims.
DISCUSSION
I. Standard of Review
Summary judgment is a “device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.” Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983), quoting Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). Summary judgment is granted when there is no genuine issue of material fact and the summary judgment record entitles the moving party to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso, 390 Mass. at 422. The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles it to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The moving party may satisfy its burden either by submitting affirmative evidence negating an essential element of the opposing party’s case, Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991), or by demonstrating “that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the burden shifts to the nonmoving party to respond by “set[ting] forth specific facts showing that there is a genuine issue for trial.” Mass.R.Civ.R 56(e); Kourouvacilis, 410 Mass. at 716. The Supreme Judicial Court has expressed a preference that defamation cases be dealt with at the summary judgment stage in order to avoid the chilling effect on journalism that defamation trials may produce. See Dulgorian v. Stone, 420 Mass. 843, 847 (1995).
II Analysis
A. Libel
In a libel action, the plaintiff must demonstrate that the defendant (1) made a false statement of and concerning the plaintiff and a matter of public concern to a third party; (2) that the statement was defamatory, in other words, that the statement could damage the plaintiffs reputation within the community; (3) that the defendant was at fault for making the statement;[3] and (4) that the statement caused the plaintiff economic loss or is actionable without proof of economic loss. See Ravnikar v. Bogojavlensky, 438 Mass. 627, 629-30 (2003); see also Reilly v. Associated Press, 59 Mass.App.Ct. 764, 769 (2003).
The defendants contend that Arnold cannot prove the elements of libel. Specifically, the defendants assert that Arnold cannot show that the passage is false and cannot show that the defendants acted with the requisite level of fault. The defendants further argue that the passage is protected opinion under the First Amendment. Finally, the defendants maintain that Arnold’s libel claim is barred by the statute of limitations.
I. False Statements
Invisible Eden addresses a matter of public concern — a then unsolved murder. As such, to recover for libel, Arnold is required to show that the complained-of passage is false. See Shaari v. Harvard Student Agencies, Inc., 427 Mass. 129, 132 (1998), quoting Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, *93 768-69 (1986) (where “a newspaper publishes speech of public concern, a private-figure plaintiff cannot recover damages without also showing that the statements at issue are false”).
A factual statement need not state the precise truth to avoid liability for defamation. Reilly, 59 Mass.App.Ct. at 770. “[W]hen the statement is substantially true, a minor inaccuracy will not support a defamation claim.” Id. When examining the truthfulness of the statement, the court must consider the work as a whole. See Dulgarian, 420 Mass. at 848. Further, when deciding whether there is an issue of fact as to the truthfulness of the statement, the interpretation of the alleged libelous statement is left to the court. See e.g., id. at 851 (finding, contrary to plaintiffs’ argument, that news report did not assert that plaintiffs’ operation of the two businesses was a violation of law); see also Jones v. Taibbi, 400 Mass. 786, 792 (1987) (determination whether complained-of statement is capable of defamatoiy meaning is for the court).
It is undisputed that the passage is about Arnold. Arnold’s argument, however, that the passage states that he is in fact the murderer, is not accurate.[4] Read reasonably and in context, the passage cannot be interpreted to state that Arnold actually committed the murder. Rather, the passage’s clear meaning is to convey that O’Keefe believed Arnold to be the prime suspect in the investigation and to set forth a possible scenario for the crime. While this distinction is slight, it bears heavily on Arnold’s libel claim.
Assuming, without deciding, that the passage is a statement of fact, rather than a statement of pure opinion, Arnold has no reasonable expectation of proving that the passage is false.[5] In the winter of 2002-2003, the time period in which the passage is set, it is undisputed that investigators then viewed Arnold as the prime suspect. In fact, both O’Keefe and Mason then believed Arnold to be the prime suspect. This is evidenced by Mason’s January 18, 2003 interrogation of Arnold, where he accused Arnold of committing the crime. At this time, Arnold too believed he was the prime suspect. Mason’s accusation, along with O’Keefe’s press conference on January 10, 2003, caused Arnold to believe that investigators had concluded that he murdered Worthington. Given these undisputed facts, Arnold cannot show that the passage — which portrays him as the prime suspect in December 2002 — is capable of being proven false. For that reason, the defendants’ motion for summary judgment on Arnold’s libel claim must be allowed.
II. Fault
Arnold also has no reasonable expectation of proving fault. To impose liability for libel, a plaintiff must demonstrate some degree of fault on the part of the defendant. Jones, 400 Mass. at 797, citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 347 (1974). The level of fault a plaintiff must establish varies depending on his or her status in the community. See Jones, 400 Mass. at 797-98. A public figure plaintiff must demonstrate that the defendant published the defamatory falsehood with actual malice. Id. at 797. A private figure plaintiff needs to show only negligent publication. Id.
Where the relevant facts are undisputed, as they are here, it is for the judge to determine whether a plaintiff is a public or private figure. Shaari, 427 Mass. at 133, n.7. The defendants argue that Arnold is a limited issue public figure, and therefore, that he must prove actual malice. This court agrees.[6]
A limited issue public figure is an individual who “voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues,” and consequently has achieved “special prominence in the resolution of public questions.” Jones, 400 Mass. at 798, quoting Gertz, 418 U.S. at 351. When determining whether a plaintiff is a limited issue public figure, the court must look “to the nature and extent of an individual’s participation in a particular controversy giving rise to the defamation.” Gertz, 418 U.S. at 352. A private figure, however, “is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention.” Wolston v. Reader’s Digest Ass’n, Inc., 443 U.S. 157, 167 (1979).
Here, Worthington’s murder generated a significant amount of attention. Both local and regional media covered the story and investigation. In addition to speaking with Flook, Arnold also spoke to journalists from the Boston Globe, Cape Cod Times and New York Magazine. Quotes attributed to Arnold in these publications show that he did not limit his comments to what was necessary to defend himself against those who thought he was involved in the crime. See Wolston, 443 U.S. at 167 (plaintiff who limited his public statements to defending himself found to be private figure). Given this, and Arnold’s affirmative choice to make many statements to the press, this court finds that Arnold voluntarily injected himself into a public controversy. See Tripoli v. Boston Herald-Traveler Corp., 359 Mass. 150, 156 (1971) (“[i]n choosing to publicly expose himself by granting interviews . . . plaintiff catapulted himself into the ‘vortex’ of an important public controversy”). Accordingly, this court concludes that Arnold is a limited issue public figure for purposes of this action.
As a limited issue public figure, Arnold cannot recover damages for libel without proving by clear and convincing evidence that the defendants acted with malice in publishing the passage. Milgroom v. News Group Boston, Inc., 412 Mass. 9, 10-11 (1992), citing New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964). “One acts with malice by publishing a statement with knowledge of its falsity or with reckless disregard to its truth or falsity.” Milgroom, 412 Mass. *94 at 11. To have acted with reckless disregard as to the truth of a statement, a defendant must have had a subjective awareness of probable falsity or entertained serious doubts as to the truth of the statement. Milgroom, 412 Mass. at 11; King v. Globe Newspaper Co., 400 Mass. 705, 719-20 (1987). A showing that a defendant acted with reckless disregard can be made on the basis of inferences drawn from objective evidence. Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 867-68 (1975).
As discussed above, this court has concluded that the passage, upon which Arnold bases his libel claim, conveys that in December 2002 Arnold was viewed as the prime suspect in the Worthington murder investigation. Therefore, to show actual malice Arnold must demonstrate by clear and convincing evidence that the defendants knew the passage was false or acted with reckless disregard as to the truth of the passage. Even when the record is viewed in the light most favorable to Arnold, Arnold has no reasonable expectation of showing that the defendants published the passage knowing it was false or with reckless disregard to its truth.
First, there is nothing in the record which indicates that the defendants knew the passage was false. Second, there is nothing in the record that shows that the defendants entertained serious doubts as to the truth of the passage. To the contrary, the record displays undisputed and substantial support for the defendants’ assertion that in the winter of 2002-2003 Arnold was the prime suspect in the investigation. As noted above, both O’Keefe and Mason then viewed Arnold as the prime suspect, and Arnold also believed at that time that investigators considered him to be the prime suspect. There is nothing in the record contradicting this evidence. Arnold’s argument, that at the time of publication, the defendants should have known that he was not the murderer because of his denials, the evidence then known and the results of his polygraph, does not negate the undisputed fact that in December 2002 he was the prime suspect. Accordingly, Arnold cannot show by clear and convincing evidence that the defendants acted with malice when they published the passage. Summary judgment on Arnold’s libel claim is therefore allowed on this additional basis.
III. Protected Opinion and Statute of Limitations
Because the court has found that Arnold cannot bear his burden of proving the passage false or that the defendants acted with malice, it need not address the defendants’ arguments that the passage is protected opinion under the First Amendment or that Arnold’s libel claim is barred by the statute of limitations.
B. Intentional Infliction of Emotional Distress
Arnold also has no reasonable expectation of proving extreme and outrageous conduct, an essential element for an intentional infliction of emotional distress claim. To prevail on an intentional infliction of emotional distress claim, the plaintiff must show that (1) the defendant intended to inflict emotional distress or knew it to be the likely result of his or her actions; (2) the defendant’s conduct was extreme and outrageous; (3) the defendant’s conduct caused the emotional distress; and (4) that the distress suffered was severe. Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976). Conduct that is extreme and outrageous is “beyond all possible bounds of decency” and is “utterly intolerable in a civilized community.” Id. at 145.
A plaintiff who is successful in a defamation case may be entitled to damages for emotional distress and harm to reputation. Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 404-05 (2005). If reasonable people could differ on whether the conduct is extreme and outrageous, then that issue is for the jury. Boyle v. Wenk, 378 Mass. 592, 597 (1979). Here, however, where there is no defamation, there is no conduct that a juiy could find extreme and outrageous. Therefore, as a matter of law, the defendants are entitled to summary judgment on Arnold’s intentional infliction of emotional distress claim.
C. Negligent Infliction of Emotional Distress
Finally, Arnold has no reasonable expectation of proving negligent infliction of emotional distress. To recover for this claim, it is necessary that the defendants be found to have been negligent. See Rodriguez v. Cambridge Hous. Auth., 443 Mass. 697, 701 (2005) (setting forth elements of claim); See also Urman v. South Boston Savings Bank, 424 Mass. 165, 171 (1997). Arnold therefore has the burden of showing that the defendants owed him a duty and violated that duly. Id. Nothing in the record demonstrates a duly owed by the defendants. Further, the record does not show conduct on the part of the defendants that would warrant a finding of negligence. Accordingly, summary judgment is allowed on Arnold’s negligent infliction of emotional distress claim.
ORDER
For the foregoing reasons, the Defendants’ motion for summary judgment is ALLOWED.

 Amold denied involvement in the crime.

 The level of fault that a plaintiff must establish varies depending on his or her status in the community (e.g. as a public figure, limited purpose public figure, or private figure). See Jones v. Taibbi, 400 Mass. 786, 797-98 (1987). This issue is discussed below.

 In his complaint and opposition to the defendants’ motion for summary judgment, Arnold claims that the passage imputes the murder to him. Because “impute” means “to attribute," this court finds that Arnold interprets the passage to convey that he is the murderer. This court’s conclusion is supported by Arnold’s opposition, wherein he asserts that the passage portrays him as the “real killer.”

 Unlike a statement of fact, a statement of pure opinion cannot be the basis for a libel claim. See King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987).

 At oral argument, plaintiffs counsel conceded that Arnold is a limited issue public figure for purposes of summary judgment.