EDMUND D. LaCHANCE, JR. *vs.* BOSTON HERALD & another.[1] No. 09-P-2129.
February 22, 2011. *Libel and Slander.*

Pro se plaintiff Edmund LaChance, Jr., an incarcerated prisoner, appeals
from a Superior Court summary judgment dismissing his claims against the
defendants for defamation and other related torts. The plaintiff has an extensive
criminal record, including separate convictions of rape and aggravated rape.[2]
In September, 2004, while serving his sentence for aggravated rape, the
plaintiff placed a personal advertisement on a Web site known as "Inmate
Connections." The Internet advertisement displayed a picture of the plaintiff
along with a brief description of his interests. Although the advertisement
disclosed his incarcerated status, it made no mention of particular criminal
convictions.

In 2005, the defendant Boston Herald published three newspaper articles on
the topic of online "dating" by incarcerated felons, written by defendant
Michelle McPhee. The first article stated that the plaintiff had been convicted
of manslaughter, and the latter two asserted that the plaintiff claimed in his
advertisement to be in prison for manslaughter. The third article also sug-
gested that the plaintiff had instead committed a "brutal sexual attack on an
elderly woman." The defendants concede that the foregoing assertions were
factually inaccurate in that the plaintiff was not in prison for manslaughter,
did not claim to be so in his advertisement, and did not commit a crime
against an elderly victim.[3]

The plaintiff subsequently brought suit against the defendants for defama-
tion and other torts.[4] Upon ruling that the alleged defamatory statements were
either privileged or substantially true, a Superior Court judge granted sum-
mary judgment for the defendants.

*Discussion.* We review a grant of summary judgment de novo, to determine
"whether, viewing the evidence in the light most favorable to the nonmoving
party, all material facts have been established and the moving party is entitled
to a judgment as a matter of law." *District Attorney for the N. Dist.* v. *School
Comm. of Wayland,* 455 Mass. 561, 566 (2009), quoting from *Augat, Inc.* v.
*Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991). In doing so, we "may
consider any ground supporting the judgment." *Augat, Inc., supra.*

Summary judgment is "especially favored in defamation cases" because
"[a]llowing a trial to take place in a meritless case 'would put an unjustified
and serious damper on freedom of expression.' . . . Even if a defendant in a
libel case is ultimately successful at trial, the costs of litigation may induce an

---

[1]Michelle McPhee. We use the spellings of the defendants' names as appearing in the
complaint.

[2]The plaintiff's convictions also include armed robbery (three counts), kidnapping,
indecent assault and battery on a person over the age of fourteen, and assault by means
of a dangerous weapon.

[3]At the time of publication, the plaintiff's criminal docket in his prosecution for ag-
gravated rape and other crimes incorrectly indicated that he had committed an "assault
and battery on an elderly person." The docket was amended several months later, at the
plaintiff's request, to omit reference to such a charge.

[4]The other claims included negligence, false light, and intentional and negligent inflic-
tion of emotional distress. Because we agree with the judge that these claims are deriva-
tive of the central claim, defamation, we focus our attention on the latter in our discussion.

unnecessary and undesirable self-censorship." *Dulgarian* v. *Stone*, 420 Mass. 843, 846 (1995), quoting from *King* v. *Globe Newspaper Co.*, 400 Mass. 705, 708 (1987), cert. denied, 485 U.S. 940 and 962 (1988).

In a defamation claim, a plaintiff's burden of proof may be heightened based on the circumstances of the case. For example, when published statements address matters of public concern, as is the case here, "the plaintiff[] must prove not only that the statements were defamatory but also that they were false." *Friedman* v. *Boston Broadcasters, Inc.*, 402 Mass. 376, 381 (1988), citing *Philadelphia Newspapers, Inc.* v. *Hepps*, 475 U.S. 767, 777 (1986).

A plaintiff's burden of proof will similarly be enhanced if he is deemed a public figure for purposes of the defamation claim. See *New York Times Co.* v. *Sullivan*, 376 U.S. 254 (1964). "Whether the plaintiff is a public figure is a question of law." *Bowman* v. *Heller*, 420 Mass. 517, 522, cert. denied, 516 U.S. 1032 (1995). A court will categorize a plaintiff as either a general purpose public figure, a limited purpose public figure, or a private citizen. *Ibid.* If the court concludes that a plaintiff is either a limited or general purpose public figure, the plaintiff must prove that the alleged defamatory statement was "made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co.*, *supra* at 279-280. We therefore must determine as a threshold matter whether the plaintiff here is a public figure.

The United States Supreme Court has held that a plaintiff's status is determined in the context of "looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation [claim]." *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 352 (1974). We focus our analysis on whether the plaintiff here is a limited public figure, since he clearly is not a general purpose public figure.[5] In *Gertz*, the Court established a two-pronged analysis for deciding whether a plaintiff is a limited purpose public figure. First, a "public controversy" must exist, *id.* at 345, and second, "the nature and extent of the individual's participation in the particular controversy" must be determined, *id.* at 352. See *Bowman*, *supra* at 523 n.7.

The articles at issue here, in which the plaintiff was prominently featured, addressed matters of public concern, specifically the dangers of interacting with violent felons online. Additionally, the plaintiff "was neither a victim nor an unwitting participant" in the defendants' coverage. *Astra USA, Inc.* v. *Bildman*, 455 Mass. 116, 145 (2009), cert. denied, 130 S. Ct. 3276 (2010). Here, the plaintiff, of his own volition, placed a personal advertisement on the Web site "Inmate Connections," which included a picture of himself taken in prison. He actively sought the attention of those visiting the site by indicating that he was seeking friendship, romance, legal help, and monetary donations. The plaintiff managed successfully to post his advertisement despite the fact that prison regulations prohibit maximum security prisoners, such as him, from having access to the Internet.

Furthermore, the plaintiff was highlighted in the articles because his adver-

---

[5] " 'Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of [his] life.' . . . The fame required for an individual to be a public figure for all purposes, as opposed to a limited purpose public figure, is very great; the individual must be a 'household name' on a national scale." *Bowman*, 420 Mass. at 522, quoting from *Gertz*, 418 U.S. at 352.

tisement was particularly misleading and controversial. Although he did admit that he was incarcerated, the plaintiff did not disclose the nature of his convictions. This is especially deceptive in light of his assertion in the advertisement that "I'm not a bad man and I treat everyone the way I wish to be treated." Also, despite the plaintiff's noting in his advertisement that he was a person who "keep[s] it real," it appears that he deliberately misstated his birth and release dates. In these circumstances, we determine that we are presented with a situation where the plaintiff has "voluntarily inject[ed] himself . . . into a particular public controversy." *Gertz, supra* at 351. We conclude that the plaintiff is a limited purpose public figure, and is therefore required to clearly and convincingly prove "actual malice" on the part of the defendants.

Having concluded that the plaintiff here was a limited purpose public figure and that the alleged defamatory statements addressed matters of public concern, we must now determine whether the plaintiff has met his elevated burden of proof in either instance. In other words, we must decide whether the plaintiff has adequately shown that the statements by the defendants were both false *and* made with "actual malice."

We consider first whether the statements made by the defendants were false. Massachusetts law recognizes that a statement is not necessarily false, for purposes of a defamation claim, simply because it contains inaccuracies. See *Milgroom* v. *News Group Boston, Inc.*, 412 Mass. 9, 13 (1992); *Reilly* v. *Associated Press*, 59 Mass. App. Ct. 764, 770 (2003). The United States Supreme Court has acknowledged the same, and further clarified the concept of falsity in *Masson* v. *New Yorker Magazine, Inc.*, 501 U.S. 496 (1991). In *Masson*, the Court observed that since the law of defamation "concentrates upon substantial truth," *id.* at 516, minor inaccuracies will "not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.' " *Id.* at 517, quoting from *Heuer* v. *Kee*, 15 Cal. App. 2d 710, 714 (1936). "Put another way, the statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.' " *Masson*, 501 U.S. at 517 (citation omitted).

In light of the Supreme Court's holding in *Masson*, we conclude that the statements made by the defendants suggesting that the plaintiff had been, or claimed to have been, convicted of manslaughter were not actionably false. The purpose of the defendants' articles was to create public awareness of the dangers of responding to online advertisements by violent incarcerated prisoners. Publication of the plaintiff's actual criminal record in the first article would have been, at the very least, equally as damaging to the plaintiff's reputation in the mind of a reader. In fact, a report of the plaintiff's rape convictions would almost certainly have had a more deleterious effect on his perceived character than the purported conviction of manslaughter, especially within the context of the article. Moreover, the statements in the second and third articles that the plaintiff's advertisement claimed he was in prison for manslaughter, while literally false, are not actionable defamation. In context, the "gist" of the articles in this regard was that inmate advertisements in general should not be trusted and the plaintiff's particular advertisement was dangerously deceptive[6] by withholding his crimes[7] while portraying himself in

---

[6]Or, as the articles put it, "downright dangerous" and "full of lies."

[7]The second article went on to report the plaintiff's "convict[ions] in 2001 of aggra-

a light that would seem more innocuous to potential respondents on a match-making Web site.[8] As the judge observed, the plaintiff "included false information about his age, release date, and the way he treats others, and kept hidden his true crimes. If the inaccurate report of a manslaughter conviction is not actionable, the inaccurate report that [the plaintiff] lied about his past conviction, when in fact he conveyed other lies in his ad and omitted any reference to the single most important fact that any person reading his personal ad should want to know, is also not actionable."

We also conclude that the plaintiff has not met his burden with respect to proving "actual malice" on the part of the defendants. The plaintiff offers no proof whether the statements were published with either knowledge of untruth or a reckless disregard as to whether they were false. Since neither falsity nor actual malice has been established, the plaintiff's defamation claim must necessarily fail. Accordingly, the judge's order of summary judgment was proper.

Finally, the plaintiff is also incorrect in his contention that the fair reporting privilege does not apply in this case. "There is a well established privilege to publish reports of judicial, legislative, or other official proceedings." *Jones* v. *Taibbi*, 400 Mass. 786, 794 (1987). The defendants' article contained a fair and accurate report of the docket entry that was in existence at the time of publication. The defendants had no way of knowing that the record was incorrect, since the docket was not amended until months after the articles had been published. Consequently, the statement referring to the plaintiff's "brutal sexual attack on an elderly woman," though inaccurate, was privileged and thus insulated from the defamation claim.

We have determined that the various other contentions made by the plaintiff on appeal are without merit and were sufficiently disposed of by the trial judge in his memorandum of decision.

*Judgment affirmed.*

*Edmund D. LaChance, Jr.,* pro se.
*Elizabeth A. Ritvo* for the defendants.

---

vated rape, kidnapping, indecent assault and battery, and assault with a dangerous weapon." The third article added substantially true details of those convictions and also of his first rape conviction.

[8]Among statements already recounted, the advertisement contained the following disarming self-descriptions: "I seek true friendship"; "I'm a loyal man"; "I'm always open to new experiences"; "sincerity is a must"; "the person is who I'm interested in"; "my appellate issues are viable"; "The United States Supreme Court has ruled on a standard of law that warrants my release"; and "I [do not have] any children, hopefully someday."