NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-71

CONSTRUCTION SOURCE MANAGEMENT, LLC

vs.

BELLE FLEUR HOLDINGS, LLC, & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This action arises from the initial stages of land development and construction of a marijuana cultivation facility.  After arbitration resulted in a significant monetary award to Construction Source Management, LLC (CSM), for breach of contract, defendants Belle Fleur Holdings, LLC (Holdings), and Belle Fleur Realty, LLC (Realty), unsuccessfully sought summary discharge of the mechanic's lien placed on the disputed property and to pursue counterclaims against CSM and its manager as a third-party defendant.  A judgment entered confirming the arbitration award, a judgment on the pleadings entered

---

[1] Belle Fleur Realty, LLC.

dismissing the counterclaims and third-party complaint, and an order entered denying the motion for summary discharge. The defendants now appeal from that order and from so much of the judgment on the pleadings that dismissed Realty's counterclaim for slander of title.[2] We affirm.

Background. In the spring of 2021, CSM agreed to build a marijuana cultivation facility for Holdings.[3] A short time before CSM began work on the facility, Holdings executed a quitclaim deed granting the underlying property to Realty, for no consideration, without informing CSM.[4] Partway into the project, Holdings began having difficulty securing funding to continue paying for construction. CSM submitted seven bills to Holdings -- the first two were paid in full while the remaining five went unpaid. Shortly thereafter, CSM ceased work, filed a notice of contract to establish a mechanic's lien against the property pursuant to G. L. c. 254, § 2, and initiated a lawsuit

---

[2] The notice of appeal also identifies the judgment confirming the arbitration award, but these are the only issues argued in the brief.

[3] The project was to be built on a parcel of land in Blandford. The building itself was to be sited at least one hundred feet above the main road, requiring CSM to install a long roadway at a steep grade. Once its employees began work, it became clear that the original design for the road would be inadequate, necessitating a change in the scope of work.

[4] At the time of the conveyance, Realty was managed by two of Holdings' owners.

against both defendants for breach of contract.  The defendants filed counterclaims against CSM and its manager alleging, among other things, that CSM and its manager had committed fraud and there was never any contract between the parties.  After an evidentiary hearing in the Superior Court, a judge determined that a binding contract existed between CSM and Holdings and allowed CSM's motion to compel arbitration.

The arbitrator conducted a hearing and, over the course of three days, considered 165 exhibits and the testimony of five witnesses.  The owners of Holdings attended the arbitration but did not testify.  The arbitrator found that Holdings breached its contract with CSM and awarded damages to CSM.  A different judge of the Superior Court entered an order confirming the arbitration award by the parties' agreement.  Subsequently, CSM moved to dismiss the defendants' counterclaims.  The defendants, in turn, moved to dissolve CSM's mechanic's lien on the property and opposed the motion to dismiss its counterclaims.  A third judge (motion judge) allowed CSM's motion, dismissing all counterclaims, and denied the defendants' motion to dissolve the lien.  The defendants appealed and claim error only in the dismissal of Realty's slander of title counterclaim and the denial of their motion dissolve the mechanic's lien.

Discussion.  1.  Slander of title.  Slander of title is a particular type of injurious falsehood involving the "disparagement of the property in land, chattels, or intangible things."  Tenants' Dev. Corp. v. AMTAX Holdings 227, LLC, 495 Mass. 207, 224 (2025), quoting Restatement (Second) of Torts § 624 comment (1977).  In order to prevail on a claim for injurious falsehood a party must show that the other party publishes a false statement and "(a) . . . intends for publication of the statement to result in harm to the interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) . . . knows that the statement is false or acts in reckless disregard of its truth or falsity."  Id., quoting Dulgarian v. Stone, 420 Mass. 843, 852 (1995).  We note that this case presents an uncommon theory of slander of title in which Realty claims CSM slandered Realty's title to intangible property -- the ability of Realty to obtain future financing -- by falsely claiming that it entered into a written contract with Realty.

"We review the grant of a motion to dismiss de novo, accepting as true all well-pleaded facts alleged in the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor."  Lanier v. President & Fellows of Harvard College, 490 Mass. 37, 43 (2022).  "In assuming the facts as

4

alleged, however, '[w]e do not regard as "true" legal conclusions cast in the form of factual allegations'" (citation omitted).  Edwards v. Commonwealth, 477 Mass. 254, 260 (2017), S.C., 488 Mass. 555 (2021).  "To survive a motion to dismiss, the facts alleged must plausibly suggest[] (not merely be consistent with) an entitlement to relief" (quotations omitted).  Id., quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).

As a threshold matter, the previous evidentiary hearing and arbitration decision have preclusive effect on many facts alleged in the defendants' counterclaim.[5]  Accordingly, we do not accept the precluded allegations as true for purposes of our review.  We do not accept as true, for example, any allegation that CSM engaged in fraudulent or deceptive behavior, as these

---

[5] Although Realty was not party to the arbitration, it was in privity with Holdings because its interests were aligned in, for example, attempting to prove that CSM was not owed any money by either party.  See DeGiacomo v. Quincy, 476 Mass. 38, 43-44 (2016) ("whether a nonparty is in privity with a party depends on the nature of the nonparty's interest, whether that interest was adequately represented by a party to the prior litigation, and whether binding the nonparty to the judgment is consistent with due process and common-law principles of fairness").  Where Realty and Holdings litigated as a single unit, were represented by the same counsel, and had overlapping ownership and management, we are satisfied that their interests were sufficiently aligned to fairly preclude relitigation of the facts found by the arbitrator.  Furthermore, they do not appeal from the motion judge's determination that Realty was in privity with Holdings for purposes of their other counterclaims.

5

claims were found to be unsubstantiated.  We also note that the arbitrator interpreted the construction contract between CSM and Holdings and determined that CSM was not paid the nearly $2.3 million it was due.[6]  Therefore, to the extent that Realty's claim of slander of title could be based on allegations that CSM acted fraudulently in procuring a signed written contract for its services, these facts have already been determined to Realty's detriment.  In examining the remainder of the facts alleged in Realty's counterclaim, the only remaining factual allegation that could possibly form the basis for Realty's slander of title claim is the allegation that CSM's statement of account "falsely claimed that BF Realty owed $2,294,038.80 to CSM under the terms of the non-existent contract between CSM and BF Realty."[7]

Specifically, in the defendants' counterclaim, they summarily allege that CSM published its statement of account with knowledge or reckless disregard of its falsity.  We need not accept this legal conclusion, which merely restates the

---

[6] We note that the arbitrator adjusted the contractual damages downward from this point, but it is undisputed that this was the amount owed under the contract.

[7] The publication of the mere assertion that CSM had a contract with Realty was unlikely to harm Realty's finances. Accordingly, it is the claimed false assertion that Realty owed a significant amount of money to CSM that must form the basis of the slander of title.

element to be proven, as true. See Schaer v. Brandeis Univ., 432 Mass. 474, 479 (2000) ("It is only when . . . conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that 'conclusions' become 'facts' for pleading purposes" [citation omitted]). Accordingly, we look to the remainder of the defendants' allegations to support the inference that CSM knew or should have known that Realty owed it nothing. Our review of the defendants' own factual allegations, however, does not support this inference. The defendants' factual allegations support the contradictory inference that it was reasonable for CSM to believe its contract with Holdings would be applicable against Realty as well.

We take as true the allegations that Realty was not a signatory of the contract between Holdings and CSM. This fact alone, however, is insufficient to support an inference of CSM's knowledge of falsity where the motion judge found that CSM was never informed that Holdings had transferred the property at issue to Realty and only learned of the transfer when CSM started the process of perfecting a mechanic's lien. Furthermore, other allegations in the defendants' counterclaim show that the defendants indicated to CSM that Realty would be

7

the party responsible for paying for the construction. For example, we take as true fact thirty-six of the counterclaim, which states that CSM's manager was shown a term sheet from the defendants' putative financier stating Realty was to receive the construction loan to finance the project. Facts twenty-two and twenty-four of the counterclaim state that Realty was formed with the express purpose of securing financing for the project being completed by CSM. Fact thirty-three alleges that CSM received assurances that "the BF Entities" (referring to both Holdings and Realty) expected to receive additional funding for the project; and fact fifty-three avers that, at some point during the project, CSM learned "the BF Entities' financing sources had withdrawn." Furthermore, the counterclaim is entirely devoid of any allegations that the defendants assiduously observed corporate formalities and maintained a strict separation of corporate identities such that CSM should have been on notice that Realty was not liable for obligations incurred by Holdings.

In sum, when taking all the nonprecluded facts in the defendants' counterclaim as true, we conclude Realty has failed to allege facts that reasonably support the inference that CSM knew or should have known its statement of account was false as to Realty. Because the defendants have failed to plausibly

8

allege a necessary element of their slander of title claim, we affirm its dismissal.

2. <u>Motion to dissolve the mechanic's lien</u>. The defendants also claim the motion judge erred in denying their motion for summary discharge of the mechanic's lien, which CSM placed on the fee interest of the property at issue pursuant to G. L. c. 254, § 2.[8] They argue that dissolution of the lien is appropriate where, as here, CSM's notice of contract stated that it had a contract with Realty and none existed, thereby failing to strictly comply with the statute.

"The mechanic's lien statute provides 'that a debt due to a person who performs labor or supplies material for the improvement of real estate by agreement or with the express of implied consent of the owner is secured by a mechanic's lien'" (citation omitted). <u>Ng Bros. Constr., Inc</u>. v. <u>Cranney</u>, 436 Mass. 638, 642 (2002). Its purpose is to ensure that contractors get paid for their labor and materials when they improve the value of another's property. A mechanic's lien is a creation of statute and can be enforced only by strict compliance with the statute. <u>Trace Constr., Inc</u>. v. <u>Dana Barros</u>

_____

[8] CSM argues that the defendants' motion to dissolve the lien was improper because, pursuant to G. L. c. 254, § 15A, the proper means to challenge the lien was to file a verified complaint. Because we find no error in the judge's denial of the defendants' motion, we need not reach this issue.

9

Sports Complex, LLC, 459 Mass. 346, 351 (2011), citing National Lumber Co. v. United Cas. & Sur. Ins. Co., 440 Mass. 723, 726, (2004). The defendants argue that CSM's lien failed to strictly comply with the statute because it improperly alleged a contract with Realty in its notice of contract. According to the defendants, this amounted to a "knowing and willful" misrepresentation as to what CSM was owed and dissolution of the lien is the only equitable decision. We are not persuaded. As noted above, the fact that CSM was owed nearly $2.3 million was settled conclusively in the arbitration.

The essence of the defendants' argument is actually that the lien was subject to summary discharge because it identified land owned by Realty where the contract was with Holdings, the putative tenant of the property. General Laws c. 254, § 2, however, explicitly contemplates a situation such as this, in which a contractor has a contract with a tenant to improve real property. The contractor may obtain a mechanic's lien on the property in such a situation when the owner of the land has consented to the improvement in question. G. L. c. 254, § 2 ("A person entering into a written contract with the owner . . . or with the consent of such owner . . . shall have a lien upon such real property"). Where an owner's consent to the improvement of real property is at issue, a judge looks for evidence of the

10

owner's "contemplation and active encouragement" of the improvements.  Trace Constr. Inc., 459 Mass. at 356. Furthermore, the consent need not be in writing.  See id. at 352 n.10.

Here, we cannot conclude the motion judge erred in determining that Realty contemplated and actively encouraged the construction of the marijuana cultivation facility by CSM.  The owners of Realty were the same parties managing Holdings and seeking financing to build the facility.  By Realty's own admission, the owners engaged with CSM as the "BF Entities" in pursuing the construction project.  The property in question was transferred from Holdings to Realty for no consideration after the contract to improve the property was in place.  Finally, one of Realty's managers sent a letter to the town where the property is located expressing Realty's consent to the improvement of the property for purposes of obtaining permits and approvals.  Because there was ample undisputed evidence in the record showing that Realty consented to the improvement of

the property in question, the judge correctly denied the motion to dissolve the mechanics lien.

Judgments affirmed.

Order denying motion for summary discharge of mechanic's lien affirmed.

By the Court (Meade, Neyman & Walsh, JJ.[9]),

Clerk

Entered:  November 25, 2025.

---

[9] The panelists are listed in order of seniority.